JUDGE SCHOFIELD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

LAWRENCE WEGLARZ and PAMELA LINDEMANN,

      Plaintiffs,

 - Against -

THE CITY OF NEW YORK; BILL DE BLASIO, As Mayor of the City of New York; THE POLICE DEPARTMENT OF THE CITY OF NEW YORK; And JAMES P. O'NEILL, as Commissioner of the Police Department of the City of New York,

      Defendants.

-----------------------------------------------------------------X

19 CV 10792

Civil Action No. 19 CV _____

**COMPLAINT**

**TRIAL BY JURY DEMANDED**

 As and for their Complaint herein, plaintiffs, Lawrence Weglarz and Pamela Lindemann, plaintiffs *pro se,* hereby allege and show to the Court:

### NATURE OF THE ACTION

 1. This is an action for compensatory damages in the sum of not less than $1,000,000 arising out of the failure and refusal of the Police Department of the City of New York ("NYPD") to search for plaintiffs' suicidal brother, Geoffrey Corbis f/k/a Geoffrey Weglarz ("Geoffrey"), a resident of another State known to be in New York City, in violation of Article IV, Section 2, Clause 1 of the United States Constitution (the "Privileges & Immunities Clause"), Section 1, final clause, of the Fourteenth Amendment to the Constitution of the United States ("the Federal Equal Protection Clause"), and Article I, § 11, of the Constitution of the State of New York ("the New York Equal Protection Clause"), as well as in violation of and defendants' statutory and common law duties to do so, based solely on the fact that Geoffrey was a resident of another State, as a consequence of which Geoffrey's body remained missing, undiscovered and decomposing for a

period of seven (7) days. Had Geoffrey been a New York resident, the NYPD would have mounted an search for him as a missing person and, in all likelihood, quickly found his body, which was ultimately located in a parked car on East 12th Street in Manhattan, approximately one hundred feet (100') from the address provided to the NYPD by plaintiffs.

## JURISDICTION AND VENUE

2. The Court has "Federal question" jurisdiction over plaintiffs' claims, pursuant to 28 U.S.C. § 1331 insofar as they arise under the Constitution of the United States.

3. The Court has "Federal civil rights" jurisdiction over plaintiffs' claim for the denial of constitutional rights, privileges and immunities, and the denial of equal rights under color of a State law, statute, ordinance, regulation, custom or usage, pursuant to 28 U.S.C. sec 1343(a)(1) and (3)

4. This is an action by two Florida residents and domiciles against (a) the City of New York, a municipal corporation with its principal place of business located within this District, and the Mayor thereof, and (b) the Police Department of the City of New York, a municipal agency with its principal place of business located within this District, and the Commissioner thereof Accordingly, the Court has "diversity" jurisdiction over plaintiffs' State and common law claims pursuant to 28 U.S.C. § 1332(a)(1).

5. In the alternative, the Court has and should exercise supplemental jurisdiction over plaintiffs' State law claims pursuant to 28 U.S.C. § 1367.

6. Venue is properly laid in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), as the events giving rise to this suit occurred in this District and defendants' principal places of business is located here.

## NOTICES OF CLAIM

7. Plaintiffs' claim for relief accrued on August 24, 2018, when the NYPD, after agreeing to canvass the area around 512 East 12th Street, New York, New York, to search for Geoffrey, failed to do so.

8. Plaintiff Lawrence Weglarz duly filed a Notice of Claim with the Comptroller of the City of New York on November 20, 2018, and was examined under oath on May 16, 2019.

9. Plaintiff Pamela Lindemann duly filed a Notice of Claim with the Comptroller of the City of New York on November 21, 2018, and was examined under oath on May 16, 2019.

10. More than eleven months has elapsed since the filing of the Notices of Claim as hereinabove alleged, however, the defendant City of New York has failed to adjust or settle said claims.

11. This suit is filed within 1 year and 90 days of the occurrence.

## IDENTITY OF THE PARTIES

12. At all times relevant hereto, plaintiff Lawrence Weglarz has been and he is as of the filing hereof a resident and domicile of the State of Florida, and a former Deputy Sheriff of Pinellas County, Florida.

13. At all times relevant hereto, plaintiff Pamela Lindemann has been and she is as of the filing hereof a resident and domicile of the State of Florida.

14. At all times relevant hereto, defendant, the City of New York, has been and is as of the filing hereof a municipal corporation organized and existing under the laws of the State of New York, with its principal place of business located in the Southern District of New York.

15. At all times relevant hereto, defendant Bill De Blasio has been and is the Mayor of the City of New York, and as such the municipal official responsible for, inter alia, the execution of all laws and policies applicable to searching for missing persons within the City of New York.

16. At all times relevant hereto, defendant, the Police Department of the City of New York, has been and is the agency of the City of New York responsible for searching for missing persons.

17. At all times relevant hereto, defendant James P. O'Neill has been and is the Commissioner of the NYPD, and as such the municipal official responsible for the NYPD's compliance with all laws and policies applicable to searching for missing persons within the City of New York.

## APPLICABLE LAW AND PUBLIC POLICIES

18. At all times relevant hereto, Article IV, Section 2, Clause 1 of the United States Constitution (the "Privileges & Immunities Clause") provided and presently provides as follows: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

19. At all times relevant hereto, the Privileges & Immunities Clause has been construed to prohibit a State from denying fundamental rights to individuals from other States.

20. The right to have the police search for a missing person under a disability, reasonably believed to be located at or about a specified location in a State, is a fundamental right which cannot be denied based on the fact that the missing person is a resident of another State.

21. At all times relevant hereto, Section 1, final clause, of the Fourteenth Amendment to the Constitution of the United States ('the Equal Protection Clause") provided and presently

provides as follows: "[N]or shall any State ... deny to any person within its jurisdiction the equal protection of the laws."

22. At all times relevant hereto, Article I, § 11, of the Constitution of the State of New York, provided and presently provides as follows, in pertinent part: "No person shall be denied the equal protection of the laws of this state or any subdivision thereof.

23. At all times relevant hereto, 42 U.S.C. §1983 provided and presently provides as follows, in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...."

24. At all times relevant hereto, Geoffrey was a "missing vulnerable adult" for the purposes of New York Executive Law § 837-f-1.

25. At all times relevant hereto, it was the public policy of the State of New York to assist national and local law enforcement agencies and officials in searching for "missing vulnerable adults".

26. At all times relevant hereto, New York law required criminal justice agencies located in this State to investigate reports of "missing vulnerable adults" without delay.

27. At all times relevant hereto, New York Executive Law § 838, subs. 10, provided, in pertinent part, that "Notwithstanding any other provision of law, no criminal justice agency shall establish or maintain any policy that requires the observance of a waiting period before accepting

and investigating a report of a missing vulnerable adult as defined in section eight hundred thirty-seven-f-one of this article."

28.     In addition to being a "missing vulnerable adult" as defined by the Executive Law, at all times relevant hereto Geoffrey was also "a person, age eighteen or over[,] who [was] … in a situation or condition which pose[d] and imminent risk of death or imminent risk of serious physical harm to him or her," and thus an "endangered adult" as defined by New York Social Services Law § 473-a.

29.     At all times relevant hereto, the NYPD General Orders ("G.O.") provided that missing person reports "WILL BE ACCEPTED for persons missing from temporary residences within New York City (hotels, rooming houses, etc.)," but "WILL NOT BE ACCEPTED" for persons "missing from a residence OUTSIDE New York City." However, with respect to such non-residents, "the local police agency may request this Department to assist in the investigation. Assigned NYPD personnel will ascertain if any known locations of the missing person with New York City require a search given the facts of the initial investigation."

30.     At all times relevant hereto, Geoffrey was a "special category" missing person for pursuant to the NYPD Patrol Guide, defined a "Special Category Missing Person" as a "person missing from a NEW YORK CITY RESIDENCE and *** [who has] [i]ndicated an intention of committing suicide." [NYPD Patrol Guide issued/effective 7/19/16, re Procedure No. 207-23]

31.     Pursuant to the same Patrol Guide instructions, the Complainant regarding a Missing Person "is not limited to a member of the family but could be another person who may reasonably be expected to know whether or not the person is missing."

32. Pursuant to the same Patrol Guide instructions, "Upon receiving a complaint of a missing person" a police officer should "respond to the scene" and undertake a thorough initial investigation of the facts and circumstances in accordance with the Patrol Guide.

33. The common law of the State of New York recognizes that by accepting a "911" call for emergency service, the NYPD may assume a "special duty" to respond to the call "in a reasonable manner." *See,* DeLong v. County of Erie, 60 N.Y.2d 296 (1983). This is referred to as the "undertaker's doctrine." See, Restatement (Second) of Torts, §§ 323-324A (1965).

34. Subsequent to the DeLong decision, the New York Court of Appeals has narrowed but not eliminated application of the "undertaker's doctrine" to police departments in New York in three (3) classes of circumstances. *See,* Applewhite v. Accuhealth, Inc., 21 N.Y.3d 420, 426 (2013). This case, involving a missing "endangered adult" who was a "vulnerable person" and "special category missing person" falls in the first class described ("the plaintiff belonged to a class for whose benefit a statute was enacted").

## FACTS RELEVANT TO ALL CLAIMS FO RELIEF

35. Geoffrey was born on May 11, 1957. As of August 24, 2018, he was 61 years of age.

36. Prior to in or about July, 2018, Geoffrey was a resident of Hillsborough County, in the State of Florida.

37. On a date presently unknown to plaintiffs, but upon information and belief in the month of July, 2018, Geoffrey traveled to the New York City metropolitan area, where he resided until the date of his death as hereinafter alleged.

38. While residing continuously in and around New York City since in and about the month of July, 2018, through August 24, 2018, Geoffrey stayed at various hotels, on occasion lived

in his car, and also frequently stayed at the home of a close friend, Letty Colon, at 520 East 12th Street, and had a key to those premises.

39. As of August 24, 2018, Geoffrey was a "vulnerable" person who had been under the care of mental health professionals (upon information and belief, a psychiatrist and a therapist) for approximately four to five years, since a date presently unknown to plaintiffs, but in or about the year 2013 or 2014, for a variety of mental conditions, including but not limited to Bipolar Disorder and Executive Function Disorder, and who had told plaintiff Lawrence Weglarz that he (Geoffrey) was suicidal.

40. On a date unknown to plaintiffs, in or about April 2018, but in any event prior to August 24, 2018, Geoffrey purchased a lethal dose of a generic version of phenobarbital on the portion of the Internet known as the "dark web."

41. On August 24, 2018, Geoffrey told his adult son, Elias Weglarz, by telephone, and his sister, plaintiff Pamela Lindemann, via a text message, that he (Geoffrey) had ingested a drug to kill himself.

42. On August 24, 2018, Geoffrey texted a friend, Sal Biagiani that he (Geoffrey) was in "lower Manhattan" "finishing things up" and thanked Biagiani for his friendship. In turn, Biagiani told plaintiff Pamela Lindemann that Geoffrey sounded suicidal.

43. In his text message to plaintiff Pamela Lindemann, Geoffrey stated that the drug he had ingested tasted worse than he thought it would.

44. At the time of Geoffrey phone call to his son, Elias, he (Geoffrey) was in evident distress, making "gurgling" noises.

45. Upon learning from his sister, plaintiff Pamela Lindemann, that Geoffrey was apparently in the act of committing suicide, plaintiff Lawrence Weglarz, called the NYPD 7th

Precinct and spoke to the "desk officer" on duty at 6:06pm., at which time plaintiff Lawrence Weglarz reported to the "desk officer" what was occurring, as hereinabove alleged.

46. The name of the "desk officer" with whom plaintiff Lawrence Weglarz spoke is unknown to plaintiffs at this time, however, plaintiffs have filed a Freedom of Information Law ("FOIL") request for this (and other) information, which is pending.

47. At that time, plaintiff Lawrence Weglarz was told by the aforesaid "desk officer" that the NYPD would not take a report or investigate a missing endangered adult unless he or she resided in New York.

48. Upon information and belief, at and about the same time as plaintiff Lawrence Weglarz called the NYPD 7th Precinct, as aforesaid, Geoffrey's friend Sal Biagiani called "911" to report that he (Biagiani) believed that Geoffrey was suicidal.

49. Upon information and belief, the Biagiani 911 call was transferred to the 9th Precinct, as a "ping" of Geoffrey's cellphone showed a location of 520 East 12th Street, Manhattan, which is within the 9th Precinct.

50. Subsequently, Officer(s) from the 9th Precinct told plaintiffs they "canvased" the area of 520 East 12th Street and did not locate Geoffrey.

51. Upon information and belief, there was either no such "canvass" conducted or any such "canvass" was conducted negligently as Geoffrey's body was subsequently found in a car parked within 100' of 520 East 12th Street.

52. The name(s) of the Officer(s) who made these statements to plaintiff Lawrence Weglarz is(are) unknown to plaintiffs at this time, however, plaintiffs have filed a Freedom of Information Law ("FOIL") request for this (and other) information, which is pending.

53. Geoffrey's presence in New York City on August 24, 2018 was confirmed by an automated automobile license "tag reader" that captured an image of his license plate at 1:18pm on August 24, 2018, while his car was traveling into New York City via the Henry Hudson Parkway. There was no such image showing his automobile leaving New York City. This information was provided to plaintiff Lawrence Weglarz by "Sgt. Chou" of the 7th Precinct on August 24, 2018, however, when plaintiff Lawrence Weglarz brought it to the attention of a desk officer of the 9th precinct (whose identity is presently unknown to plaintiffs), in support of plaintiffs' ongoing requests for a search for Geoffrey's car and body, plaintiff Lawrence Weglarz was told by the desk officer of the 9th precinct that the NYPD would not search for Geoffrey since his automobile was registered in the State of Florida and he had "no residence" in New York City.

54. Plaintiffs Lawrence Weglarz and Pamela Lindemann, and, upon information and belief, others, during the period August 24, 2018 – August 31, 2018, made at least twenty-five (25) calls to the 9th Precinct and to the NYPD Missing Persons unit begging and pleading for a search for Geoffrey, repeatedly advising various NYPD personnel, *inter alia,* that Geoffrey had resided in and around New York City since sometime in July, that he was a vulnerable person who was threating to commit (and believed to have possibly committed) suicide, that the tracking of his automobile license tags established that he was in New York City on August 24, 2018, and that he was believed to be in the vicinity of 520 East 12th Street.

55. Upon information and belief, on the morning of August 25, 2018, when Geoffrey's friend, Letty Colon, attempted in person to report Geoffrey to the 9th NYPD Precinct as missing person, she was told by the "desk officer" on duty, or other NYPD personnel unknown to plaintiff, that the NYPD would not take a report as there were "no documents" (e.g., mail) linking him to 520 East 12th Street.

56. Despite Geoffrey's temporary residence in and around New York City and his status as a "vulnerable missing adult," these pleas for assistance were uniformly and wrongly met with resistance and the advice that the NYPD only searches for missing New York City residents, and that plaintiffs had to first report Geoffrey as a missing person to the police in Hillsborough County, Florida. However, when plaintiffs attempted to do so, the Hillsborough County authorities initially refused to accept their report because they (truthfully) disclosed that Geoffrey was a temporary resident of, and believed to be located in, New York City.

57. When a missing person report was finally accepted by the Hillsborough County Sheriff's Office on August 27, 2018, all attempts to obtain the assistance of the NYPD were still fruitless. Each call by plaintiff Lawrence Weglarz (himself a former Pinellas County, Florida, Deputy Sheriff) resulted in a further refusal to help and conflicting advices as to how the Hillsborough County Sheriff's Office should contact the NYPD.

58. At no time after the alleged "canvass" of the area around 520 East 12th Street did the NYPD search for Geoffrey.

59. Although Geoffrey's car was parked illegally (due to alternate side-of-the-street parking), no NYPD officers issued any tickets to it or investigated when it was not moved to permit street cleaning.

60. Geoffrey was finally found (by a private citizen) in his parked car within 100 feet of 520 East 12th Street, Manhattan.

61. Upon information and belief, had defendants conducted a proper search for Geoffrey in the vicinity of 520 East 12th Street, his body would have been promptly discovered on August 24, 2018.

62.   The failure of the NYPD to conduct a proper search, in violation of its constitutional, statutory and common law obligations to do so, was the proximate cause of the delay in finding Geoffrey's body.

63.   At the time it was discovered, due to the summer heat, Geoffrey's body was in an advance state of decomposition, such that the Office of the New York City Medical Examiner would not permit the family to see Geoffrey's remains, which could only be identified by medical records.   News media, including the New York Times (https://www.nytimes.com/2018/10/23/nyregion/man-found-dead-in-car-new-york.html), subsequently reported that his body smelled like a "dead rat" and a mother reported her small child vomited near the car due to odor. It was also reported when the car door was opened "a powerful odor filled the block for hours," and "residents kept their distance." These are plaintiffs' final memories of Geoffrey.

64.   On October 9, 2018 plaintiffs traveled to New York City to retrieve Geoffrey's belongings that were in is car from the NYPD, 9th Precinct.  Geoffrey's property was contained in a sealed plastic bag and released to plaintiffs in the lobby of the 9th Precinct.  Upon opening the bag in the lobby, a strong odor was emitted causing a individual in the lobby to gasp. An uniformed police officer (identity unknown to plaintiffs) stated the odor was "not as bad as it had been," and we DEFINITELY did not want to go to where Geoffrey's car was located.  To plaintiffs' shock, in callous disregard of plaintiffs' sensibilities and basic common sense plaintiffs were given no warning of this, nor were any masks or other protective offered or provided, and a number of Geoffrey's belongings had to be discarded on the spot due to being permeated with the smell of rotten flesh.

65.     As a result of defendants' violation of its obligation to search for Geoffrey, and its failure to do so, each plaintiff suffered extreme emotional suffering and distress between August 24, 2018 and August 31, 2018, and as a consequence thereof.

66.     Despite demand, the NYPD has refused to change its policy to refuse to search for "vulnerable missing persons" who are residents of other jurisdictions but believed to be located in the City of New York, in circumstances where the NYPD would search for the missing individual if he or she were a permanent New York City resident.

67.     Upon information and belief, unless restrained and enjoined by this Court, defendants will continue their unconstitutional and wrongful policy as aforesaid, leaving thousands of temporary residents, transient visitors, and homeless individuals whose New York City residence cannot be proven, and their families, without the protection and assistance to which they are entitled as a matter of constitutional and statute law, as well as fundamental human rights, and which all New York City residents enjoy.

68.     Plaintiffs have no adequate remedy at law.

### FIRST CLAIM FOR RELIEF

**(For A Declaratory Judgment, Injunction and Damages Based Upon Violation of the Privileged & Immunities Clause and the Federal Equal Protection Clause)**

69.     The Court should declare the policy of the NYPD to refuse to search for missing persons, reasonably believed to be located in the City of New York, but who are not permanent residents of the City of New York, based on their residency, in circumstances in which the NYPD would search for New York City residents, unconstitutional in violation Article IV, Section 2, Clause 1 of the United States Constitution (the "Privileges & Immunities Clause") and Section 1,

final clause, of the Fourteenth Amendment to the Constitution of the United States ("the Federal Equal Protection Clause").

70. The Court should enter a permanent injunction directing defendants to refrain from refusing to search for missing persons, reasonably believed to be located in the City of New York, but who are not permanent residents of the City of New York, based on their residency, in circumstances in which the NYPD would search for New York City residents.,

71. Plaintiffs should recover their damages on account of the NYPD's unconstitutional refusal to search for Geoffrey based on his lack of permanent residence in New York City, in such amount as may be proven upon the trial of this action, but not less than $500,000 each.

### SECOND CLAIM FOR RELIEF

### (For A Declaratory Judgment, Injunction and Damages Based Upon Violation of the New York Equal Protection Clause)

72. The Court should declare the policy of the NYPD to refuse to search for missing persons, reasonably believed to be located in the City of New York, but who are not permanent residents of the City of New York, based on their residency, in circumstances in which the NYPD would search for New York City residents, unconstitutional in violation Article I, §11, of the Constitution of the State of New York (the "New York Equal Protection Clause").

73. The Court should enter a permanent injunction directing defendants to refrain from refusing to search for missing persons, reasonably believed to be located in the City of New York, but who are not permanent residents of the City of New York, based on their residency, in circumstances in which the NYPD would search for New York City residents.,

74. Plaintiffs should recover their damages on account of the NYPD's unconstitutional refusal to search for Geoffrey based on his lack of permanent residence in New York City, in such amount as may be proven upon the trial of this action, but not less than $500,000 each.

### THIRD CLAIM FOR RELIEF

#### (For Compensatory Damages Pursuant to the Federal Civil Rights Act)

75. By reason of the NYPD's unconstitutional refusal to search for Geoffrey based on his lack of permanent residence in New York City, and the resulting delay in locating his body (and the extreme decomposition thereof), plaintiffs were caused extreme emotional suffering and distress.

76. Plaintiffs should recover their damages on account of the NYPD's unconstitutional refusal to search for Geoffrey, in such amount as may be proven upon the trial of this action, but not less than $500,000 each.

### FOURTH CLAIM FOR RELIEF
#### (For Common Law Compensatory Damages)

77. At all times relevant hereto, Geoffrey belonged to a class for whose benefit a statute was enacted, to wit, he was an "endangered adult" as defined by the New York Social Services Law, a "missing vulnerable person" as defined by the New York Executive Law, and a "special category missing person" as defined by the NYPD General Orders and Patrol Guide.

78. On August 24, 2018, the agreement of the NYPD to "canvass" in the vicinity of 520 East 12th Street, Manhattan to search for Geoffrey gave rise to a special duty on the part of the NYPD to plaintiffs, members of Geoffrey's family who requested the search, to do so.

79. Upon information and belief, the NYPD breached its aforesaid duty either by not "canvassing" after agreeing to do so, or by doing so in negligent manner which did not follow the requirements of the NYPD Patrol Guide for conducting a search for a missing person.

80. The culpable conduct of the NYPD complained of herein was the proximate cause of a one week delay in finding Geoffrey's body, by which point it "smelled like a dead rat" and was in such an advanced state of decay that plaintiffs were unable to view his remains.

81. By reason of the NYPD's breach of duty and culpable conduct, plaintiffs were caused extreme emotional suffering and distress.

82. Plaintiffs should be awarded damages to compensate them for such suffering and distress caused by the NYPD, in an amount to be determined upon the trial of this action, but not less than $500,000 each.

*WHEREFORE,* plaintiffs demand judgment against defendants as follows:

A. On the First Claim for Relief, declaring the policy of the NYPD to refuse to search for missing persons, reasonably believed to be located in the City of New York, but who are not permanent residents of the City of New York, based on their residency, in circumstances in which the NYPD would search for New York City residents, unconstitutional in violation Article IV, Section 2, Clause 1 of the United States Constitution (the "Privileges & Immunities Clause") and Section 1, final clause, of the Fourteenth Amendment to the Constitution of the United States ("the Federal Equal Protection Clause"); permanently enjoining defendants to refrain from refusing to search for missing persons, reasonably believed to be located in the City of New York, but who are not permanent residents of the City of New York, based on their residency, in circumstances in which the NYPD would search for New York City residents, and awarding plaintiffs compensatory damages, on account of the NYPD's unconstitutional refusal to search for Geoffrey

based on his lack of permanent residence in New York City, in such amount as may be proven upon the trial of this action, but not less than $500,000 each.

        B.      On the Second Claim for Relief, declaring the policy of the NYPD to refuse to search for missing persons, reasonably believed to be located in the City of New York, but who are not permanent residents of the City of New York, based on their residency, in circumstances in which the NYPD would search for New York City residents, unconstitutional in violation Article I, § 11 of the Constitutional of the State of New York (the "New York Equal Protection Clause"); permanently enjoining defendants to refrain from refusing to search for missing persons, reasonably believed to be located in the City of New York, but who are not permanent residents of the City of New York, based on their residency, in circumstances in which the NYPD would search for New York City residents, and awarding plaintiffs compensatory damages, on account of the NYPD's unconstitutional refusal to search for Geoffrey based on his lack of permanent residence in New York City, in such amount as may be proven upon the trial of this action, but not less than $500,000 each.

        C.      On the Third Claim for Relief, awarding plaintiffs compensatory damages, on account of violation of plaintiffs' Federal constitutional rights in such amount as may be proven upon the trial of this action, but not less than $500,000 each.

        D.      On the Fourth Claim for Relief, awarding plaintiffs compensatory damages, on account of the NYPD's negligence in "canvassing" for Geoffrey after agreeing to search for him, in such amount as may be proven upon the trial of this action, but not less than $500,000 each.

        E.      On all Claims For Relief, such other, further and different relief as may be just, necessary and proper, including but not limited to pre- and post-judgment interest, costs, disbursements, and legal fees and expenses, all as permitted by law.

Dated: November 18, 2019

_____
Lawrence Weglarz, Plaintiff Pro Se
11212 Moultrie Place
Tampa, Florida 33625
(727) 400-1519

_____
Pamela Lindemann, Plaintiff Pro Se
11076 Windsor Place Cir
Tampa, Florida 33636
(727) 644-7382

True Copy November 18, 2019

PATRICIA RODRIGUEZ
Notary Public - State of Florida
Commission # GG 010723
My Comm. Expires Jul 12, 2020

**FLORIDA JURAT**
FS 117.05

State of Florida
County of Hillsborough

Sworn to (or affirmed) and subscribed before me this 18th day of November, 2019,
*Day          Month          Year*

by Lawrence Weglarz and Pamela Lindemann
*Name of Person Swearing or Affirming*

_____
*Signature of Notary Public — State of Florida*

Patricia Rodriguez
*Name of Notary Typed, Printed or Stamped*

☐ Personally Known
☑ Produced Identification

Type of Identification Produced: Florida Drivers Licenses.

[Notary Seal: PATRICIA RODRIGUEZ, Notary Public - State of Florida, Commission # GG 010723, My Comm. Expires Jul 12, 2020]

*Place Notary Seal Stamp Above*

---
**OPTIONAL**
*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: Court Document / Complaint / Trial by Jury Demanded
Document Date: November 18, 2019     Number of Pages: 18
Signer(s) Other Than Named Above: _____

©2019 National Notary Association

M1304-10 (09/19)